## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FNU ROHMEENA,<br><br>*Plaintiff*,<br><br>v.<br><br>RENA BITTER, *et al.*,<br><br>*Defendants*. | Case No. 1:23-cv-2754 (ACR) |

## <u>MEMORANDUM OPINION AND ORDER</u>

In 2022, Plaintiff Fnu Rohmeena applied for an immigrant visa to join her husband in the United States. She has not yet sat for a consular interview—a necessary step toward acquiring a visa. Plaintiff has sued several State Department officials, seeking an order compelling prompt adjudication of her application. Although the Court sympathizes with Plaintiff's situation, her Complaint does not plausibly show that the delay is unreasonable. The Court therefore dismisses this case without prejudice.

## I.    BACKGROUND

### A.    Legal Background

A U.S. citizen who wants to help a noncitizen spouse obtain lawful permanent resident status may file an I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services (USCIS), a subagency of the Department of Homeland Security. *See* 8 U.S.C. §§ 1152(b)(2)(A)(i), 1154; 8 C.F.R. § 204.1(a)(1). If USCIS approves the petition and the beneficiary spouse is outside the United States, the agency forwards the case to the State Department's National Visa Center (NVC) for processing. 8 C.F.R. § 204.2(a)(3). The beneficiary spouse must then submit additional paperwork, including a visa application form,

1

and fees.  *See* 22 C.F.R. §§ 42.62-.63; 9 Foreign Affs. Manual § 504.1-2(b), https://fam.state.gov/

FAM/09FAM/09FAM050401.html [https://perma.cc/END7-MHKW].  Once the applicant (that

is, the beneficiary spouse) meets those requirements, the NVC designates the case

"documentarily complete" and coordinates with the appropriate consulate or embassy to

schedule the applicant for a required consular interview.  *See* 22 C.F.R. § 42.62; 9 Foreign Affs.

Manual § 504.1-2(b)-(d).  "Appointments are generally scheduled in the chronological order of

the documentarily complete applicants."  9 Foreign Affs. Manual § 504.1-2(d).  Following the

interview, the consular officer "must" generally either "issue the visa" or "refuse the visa."[1]  22

C.F.R. § 42.81(a).

### B.  Factual Background

The Court takes the facts from Plaintiff's Complaint.  *See Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).

Plaintiff Rohmeena is a citizen and resident of Pakistan.  Dkt. 1 (Compl.) ¶ 12.  Her

husband, Ramin Sadat, is a U.S. citizen.  *Id.* ¶ 2.  Sadat filed an I-130 petition with USCIS on

Plaintiff's behalf in February 2021.  *Id.* ¶ 19.  USCIS approved the petition in September 2022.

*Id.* ¶ 20.  At some point thereafter, USCIS forwarded the case to the NVC, which designated

Plaintiff's application documentarily complete in December 2022—presumably after Plaintiff

submitted the application materials and fees described above, though the Complaint, puzzlingly,

does not describe those submissions or the dates on which Plaintiff made them.  *See id.* ¶ 22.

The next step toward Rohmeena's obtaining a visa is a consular interview at the U.S.

Embassy in Pakistan.  *See id.* ¶ 4; *supra* Section I.A.  But that interview has not yet taken place.

---

[1] The consular officer must instead "discontinue granting the visa" if the applicant's country is subject to visa sanctions under 8 U.S.C. § 1253(d).  22 C.F.R. § 42.81(a).

The delay has separated Plaintiff from her husband in the United States and caused them both "significant personal, financial, and emotional hardship." Compl. ¶ 7. Plaintiff has "experienced episodes of vertigo, sleeplessness, fear, and nonstop emotional breakdowns." *Id.* ¶ 8. Her husband has suffered "stress and anxiety" and struggled to care for an ailing family member without Plaintiff's assistance. *Id.* ¶¶ 9, 10. Both have had to "forgo better work opportunities," and the need two support two households has strained the couple financially. *Id.* ¶¶ 10-11. In addition, "Plaintiff and her husband are concerned about potential difficulties in conceiving children if this delay continues." *Id.* ¶ 9.

### C.   Procedural Background

Plaintiff filed this case against Assistant Secretary of State for Consular Affairs Rena Bitter, Secretary of State Antony Blinken, and Deputy Chief of Mission for the U.S. Embassy in Pakistan Andrew Schofer in September 2023. Compl. The Complaint asserts that Defendants have unreasonably delayed in conducting Plaintiff's consular interview and adjudicating her visa application. *Id.* ¶¶ 1-5, 25-36. Citing both the Administrative Procedure Act (APA), 5 U.S.C. § 706, and the Mandamus Act, 28 U.S.C. § 1361, Plaintiff seeks an order compelling Defendants to decide the application. Compl. ¶¶ 25-36; *id.* at 6-7. Defendants have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2] Dkt. 8 (Mot.).

---

[2] The Motion also seeks dismissal for lack of jurisdiction under Rule 12(b)(1), arguing that Defendants do not have any clear, nondiscretionary duty to act, as is necessary for a mandamus claim. Mot. at 5-12. That argument, which has divided courts in this District, "is at most a matter of statutory jurisdiction, rather than an Article III concern." *Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *5 & n.5 (D.D.C. Mar. 8, 2024). Because the Court "may address the merits where doing so makes it possible to avoid a doubtful issue of statutory jurisdiction," *id.* (cleaned up), and agrees that Plaintiff has not stated a claim, the Court bypasses this argument.

## II.     LEGAL STANDARDS

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up).  To meet that standard, a plaintiff's allegations must support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

## III.     ANALYSIS

 "[T]he central question" in unreasonable-delay cases under both the APA and the Mandamus Act "is 'whether the agency's delay is so egregious as to warrant mandamus.'" *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *6 (D.D.C. Jan. 30, 2024) (cleaned up) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

To answer that question, courts in this Circuit consider the six "*TRAC*" factors, drawn from the D.C. Circuit's decision in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984): (1) "[T]he time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent

4

of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* at 80 (cleaned up).  "These considerations are often grouped into four basic inquiries":

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)?  Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)?  Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)?  Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023) (cleaned up).

As a threshold matter, Plaintiff asserts that it is "inappropriate to dismiss undue delay claims at the motion to dismiss stage" because of their "fact-intensive nature."  Dkt. 9 (Opp.) at 9.  Unfortunately for Plaintiff, the D.C. Circuit (and the overwhelming weight of case law from this District) disagrees.  *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340-46 (D.C. Cir. 2023) (affirming dismissal of visa-delay case for failure to state claim based on *TRAC* factors); *Yazdanpanahderav v. U.S. Dep't of State*, No. 23-cv-3688, 2024 WL 3010874, at *4 n.4 (D.D.C. June 14, 2024) (collecting many decisions from this District dismissing visa-delay claims under Rule 12(b)(6)).  The Court does not expect Plaintiff to *prove* her case or allege every necessary detail at this stage.  But—however fact-intensive the ultimate merits question may be—a plaintiff must plead plausible claims to survive a motion under Rule 12(b)(6).  *See Iqbal*, 556 U.S. at 678.  Because Plaintiff's allegations do not support a reasonable inference that Defendants' delay is unreasonable, the Court must dismiss this case.  *See id.*

1.      ***TRAC* factors one and two**

The first two factors, which consider whether the agency is following a "rule of reason,"

"congressionally prescribed or otherwise," *Khazaei*, 2023 WL 6065095, at *6 (cleaned up), cut

Defendants' way.  The D.C. Circuit has concluded that an agency "employs a rule of reason"

when it processes immigration applications or petitions on a "first-in, first-out" basis.  *Da Costa*,

80 F.4th at 340-41.  Here, the State Department represents in published materials that it

"generally schedule[s interviews] in the chronological order of the documentarily complete

applicants," with some consideration for "mailing delays or travel time by applicants."  9 Foreign

Affs. Manual § 504.1-2(d); *see also Da Costa*, 80 F.4th at 336-37, 340-41 (relying on similar

representations in agency publication).  Plaintiff offers no reason to doubt that the State

Department follows such a system or that, if it does, the approach qualifies as a rule of reason for

purposes of the first two *TRAC* factors.

Case law confirms that the delay here is not unusual or inconsistent with a rule of reason.

"Courts in this jurisdiction often look to the length of delay as a rough yardstick to determine

whether [a] 'first-in, first-out' rule is, in fact, being applied," *Khoshrou v. Blinken*, No. 22-cv-

2859, 2023 WL 4930086, at *5 (D.D.C. Aug. 2, 2023), and the delay here—less than 24 months

since USCIS transferred the case to the NVC and roughly 20 months since the NVC designated

Plaintiff's application documentarily complete[3]—is shorter than those that courts have found reasonable in similar cases.  *See, e.g.*, *Yazdanpanahderav*, 2024 WL 3010874, at *5, *7 (dismissing unreasonable-delay claim based on delay of roughly 24 months after case transferred to NVC and 20 months after application designated documentarily complete); *Armah*, 2024 WL 2721634, at *4 & n.4, *9 (same with roughly 24-month delay in scheduling interview after application designated documentarily complete); *Akrayi v. U.S. Dep't of State*, No. 22-cv-1289, 2023 WL 2424600, at *1, *3 (D.D.C. Mar. 9, 2023) (same with roughly 36-month delay after application designated documentarily complete); *Rahimian v. Blinken*, No. 22-cv-785, 2023 WL 143644, at *2, *6 n.6, *6-9 (D.D.C. Jan. 10, 2023) (same with roughly 41-month delay after USCIS approved I-130 petition).  Nothing in Plaintiff's Complaint supports a reasonable inference that the agency is not following a rule of reason.

Turning to the second *TRAC* factor, Plaintiff argues that Congress provided an "indication of the speed with which it expects the agency to proceed," *TRAC*, 750 F.2d at 80, in 8 U.S.C. § 1571, which provides:

> It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a

---

[3] Courts' approaches diverge as to the details of how to calculate delay in visa-delay cases—for example, whether the relevant period begins when USCIS approves the I-130 petition (here, September 2022), when the applicant submits the required materials (sometime between September and December 2022), or at the time of the last action by the agency (December 2022), and whether it ends when the case is filed (September 2023) or on the date of the decision (today).  *See, e.g., Dehkordi v. Bitter*, No. 22-cv-2470, 2023 WL 5651845, at *4 n.4 (D.D.C. Aug. 31, 2023).  The Court need not decide among those alternatives because, no matter which of those possible start date applies and even assuming the delay runs through today, Plaintiff's claims fail.  If Plaintiff means to argue instead that the delay began in February 2021 when Plaintiff's husband submitted an I-130 petition to USCIS, *see* Opp. at 7, the Court disagrees. "Plaintiff[] do[es] not allege any delays in the processing of [that] petition, which was [processed and] approved . . . by a different agency than the one responsible for the current alleged delay." *Bahrami v. Blinken*, No. 23-cv-1477, 2024 WL 3638200, at *4 n.4 (D.D.C. Aug. 2, 2024) (cleaned up) (rejecting same argument).

> nonimmigrant visa under section 1184(c) of this title should be
> processed not later than 30 days after the filing of the petition.

8 U.S.C. § 1571(b).  That language, however, "appears in a section directed not to consular

officials but to the Immigration and Nationality Service (INS), a since-dissolved agency distinct

from the State Department whose functions have largely transferred to entities within the

Department of Homeland Security."  *Rashidian*, 2024 WL 1076810, at *7.  And the language is

precatory, rather than binding.  *See Da Costa*, 80 F.4th at 344 (observing that § 1571(b) "is

insufficient to set a deadline").  Although the D.C. Circuit has reasoned that—at least in the

context of a suit against USCIS (a component of the INS's successor agency, the Department of

Homeland Security)—this provision "somewhat" helps a plaintiff who has waited more than 180

days for an immigration benefit, it has also held that the delay must reach an egregious "level of

disproportionality" to justify relief.  *Id.  Da Costa*, for example, concluded that, even considering

the 180-day period given in § 1571, a delay of four-and-a-half years in processing an

immigration petition was reasonable.  *Id.* at 342, 344, 346.  The far shorter delay here does not

plausibly reach the requisite "level of disproportionality."  *Id.* at 344.  On balance, the first two

*TRAC* factors support dismissal.

### 2.    *TRAC* **factor four**

The fourth factor, "the effect of expediting delayed action on agency activities of a higher

or competing priority," *TRAC*, 750 F.2d at 80, "carries significant weight," *Barazandeh*, 2024

WL 341166, at *9, and strongly favors Defendants.  The D.C. Circuit has "refused to grant relief,

even though all the other factors considered in *TRAC* favored it, where a judicial order putting [a

party] at the head of the queue would simply move all others back one space and produce no net

gain."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir.

2003) (cleaned up).  Plaintiff requests exactly this type of relief.  Since "[c]onsular processing

capacity is . . . a zero-sum game," an order expediting processing of Plaintiff's application "would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own,"[4] *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024) (cleaned up); *accord Da Costa*, 80 F.4th at 343-44.  As a result, the fourth factor cuts heavily in favor of dismissal.

### 3.    *TRAC* factors three and five

*TRAC* factors three and five, which examine "the interests prejudiced by the delay," including the effect on "human health and welfare," *Da Costa*, 80 F.4th at 344 (quoting *TRAC*, 750 F.2d at 80), arguably favor Plaintiff.  Plaintiff alleges that the delay has caused her "significant personal, financial, and emotional hardship" by separating her from her husband. Compl. ¶¶ 7-11.  Courts in this District have concluded that similar allegations tilted these factors in other plaintiffs' favor, if only narrowly, *see, e.g.*, *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 77 (D.D.C. 2022) (finding that the third and fifth *TRAC* factors "slightly" favored a visa-delay plaintiff based on an allegation that the delay "'had a profound and negative impact' on his life").  But, while Plaintiff's distress is understandable, "many others facing similar circumstances" are experiencing similar harms.  *Siddiqui*, 646 F. Supp. 3d at 77 (cleaned up);

---

[4] Plaintiff cites a handful of out-of-circuit decisions for the proposition that visa applicants "should not be penalized for a systemic lack of agency resources."  *See* Mot. at 9.  But Plaintiff does not seek relief that will cure any resource shortages or help visa applicants as a class.  *Cf. Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 819 (D.C. Cir. 2024) (distinguishing between cases seeking class-wide relief—which minimizes line-jumping concerns—and those requesting individual remedies).  She does not, for example, request an order requiring the State Department to devote more resources to processing all visa applications.  Instead, she seeks only individual relief expediting processing of her application.  That is a completely understandable request, but it will not produce any "net gain," *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (cleaned up); it will merely shift the burden to other applicants.  The Court cannot force the agency to prioritize Plaintiff's case simply because she has the wherewithal to hire an attorney to bring this case.

*accord Bahrami v. Blinken*, No. 23-cv-1477, 2024 WL 3638200, at *7 (D.D.C. Aug. 2, 2024) ("[D]elays in visa processing separate . . . many families."). Without more unusual, urgent harm, the third and fifth *TRAC* factors are not enough to justify overriding the agency's decisionmaking and moving Plaintiff ahead of other applicants. *See Da Costa*, 80 F.4th at 344-45.

### 4.    *TRAC* factor six

The sixth *TRAC* factor—whether "any impropriety lurk[s] behind agency lassitude," *TRAC*, 750 F.2d at 80 (cleaned up)—does not move the needle. Plaintiff concedes that "there is no evidence that Defendants have engaged in any improper conduct." Opp. at 15. Because the Court "need not find any [impropriety] in order to hold that agency action is unreasonably delayed," this factor is neutral. *Da Costa*, 80 F.4th at 345-46 (cleaned up).

*       *       *

Taken together, the *TRAC* factors do not plausibly point Plaintiff's way. The Court therefore dismisses this case.

## IV.    CONCLUSION AND ORDER

As Defendants acknowledge, Plaintiff's "frustration . . . is understandable." Mot. at 20. But because the Complaint does not plausibly allege that the delay here is unreasonable, the Court must dismiss this case.

For these reasons, the Court hereby **GRANTS** Defendants' Motion to Dismiss, Dkt. 8; **DISMISSES** Plaintiff's Complaint, Dkt. 1, and this case without prejudice; and **DIRECTS** the Clerk of Court to close this case.

**SO ORDERED.**

This is a final appealable Order.  *See* Fed. R. App. P. 4(a).


Date:   August 22, 2024

                                           _____
                                           ANA C. REYES
                                           United States District Judge